[Civ. No. 26172. Fourth Dist., Div. One. Apr. 27, 1983.]

RAY A. JESSEN et al., Plaintiffs and Appellants, v.
KEYSTONE SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

## COUNSEL

Shenas, Robbins, Shenas & Shaw, Peter Shenas and Dennis W. Fliehman for Plaintiffs and Appellants.

McKenna, Conner & Cuneo, Aaron M. Peck, I. Bruce Speiser, C. Steven McMurry and Dean J. Zipser for Defendants and Respondents.

## OPINION

**WORK, J.**—Ray Jessen and others appeal a denial of their request for a preliminary injunction to halt a nonjudicial foreclosure sale of their various interests in several condominium units. We affirm.

### Factual and Procedural Background

Jessen-Norwich[1] borrowed money from Keystone Savings and Loan Association to finance construction of condominium units it intended to sell. The project has been completed and most units have been sold. The property secures deeds of trust held by the lender. Keystone seeks to foreclose under powers of sale in its 1977 and 1979 construction loan deeds of trust[2] and two 1980 individual purchase money trust deeds, one securing a purchase money loan on unit No. 4 made by Ray and Rebecca Jessen and the other securing a loan on unit No. 2 made by the Jessens and the other plaintiffs jointly.

---

[1] Ray Jessen is the successor in interest to Jessen-Norwich.

[2] Only unit Nos. 8 and 15 remain unsold and subject to these construction loan deeds of trust.

Keystone seeks only money and it appears the sale of the real property would substantially satisfy its demands. It also appears any recovery to which it is entitled can be satisfied from a bond which plaintiffs offer to post to obtain a preliminary injunction restraining foreclosure pending disposition of the underlying lawsuit in which plaintiffs claim substantial damages and offsets exceeding Keystone's claims.

The trial court, after hearing, denied the preliminary injunction because it believed plaintiffs had only a marketing interest in the respective condominiums. The court equated all four condominium units with other fungible goods and was satisfied the plaintiffs' only interest was monetary, an interest for which they could be adequately compensated in money damages should they prevail in the lawsuit. (Solvency of Keystone is not at issue.) We stayed foreclosure pending appeal.

## *Discussion*

The grounds justifying equitable relief by way of injunction are stated in Code of Civil Procedure section 526.[3] Subdivision 2 authorizes relief upon a showing of great or irreparable injury to a party, and subdivision 4 authorizes it when pecuniary compensation will not give adequate relief.

■ These subdivisions tend to factually overlap. It would appear an irreparable injury is one for which either (1) its pecuniary value is not susceptible to monetary valuation, or (2) the item is so unique its loss deprives the possessor of intrinsic values not replaceable by money or in kind. Neither factor is shown to exist here.

## *The Marketed Units*

Here, unit Nos. 8 and 15 had been pricetagged and were being openly marketed. The trial court correctly determined they had no unique relationship to Ray Jessen other than their market price. On the other hand, the Jessens and the other plaintiffs purchased unit Nos. 2 and 4 for their individual investment purposes. There is no contention those investment plans were short term rather than long term, that any sale price had yet been established or decision made to market them.

■ Plaintiffs claim an injunction is required simply because it is real property upon which foreclosure is sought, and the uniqueness of real property

---

[3]All statutory references are to the Code of Civil Procedure unless otherwise specified.

prevents its taking ever being adequately compensated by money.[4] They cite Civil Code section 3387: "It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation." This presumption, and most cases cited, pertain to specific enforcing contracts for conveyance of real property. Although those cases apply the Civil Code presumption to both commercial and noncommercial real property and find no difference between a buyer's desire to reside upon or to use the property for investment purposes, they are inapposite here where unit Nos. 8 and 15 have an established sales price and are being openly marketed. Their maximum value to Ray Jessen is precisely his current sales price. The trial court correctly determined the loss of unit Nos. 8 and 15 may be adequately compensated in damages and will create no great or irreparable harm.

### The Units Held for Investment

However, unit Nos. 2 and 4 are held for undefined investment purposes, a "use" potentially including the owners' personal occupancy, renting until an appropriate market climate, or for other purposes within their total investment plan. In this sense, the issue regarding unit Nos. 2 and 4 is no different than that considered in *Stockton* v. *Newman* (1957) 148 Cal.App.2d 558 [307 P.2d 56], a decision affirming the trial court's enjoining foreclosure of a trust deed securing a loan against an apartment house. There the "use" was commercial and the foreclosing parties were solvent. However, the reviewing court held the possibility plaintiffs might recover damages against the lenders which, in the absence of foreclosure, would leave them without money damages plus use of the property, justified the injunction. The court stressed the inadequacy of the legal remedy because of the unique nature of the real property. It treated the foreclosure as "tending to render the [potential] judgment ineffectual . . . ." (§ 526, subd. 3.) For the same reason, it would not have been an abuse of discretion to have granted an injunction as to unit Nos. 2 and 4. However, we are faced with the question of whether it was an abuse of discretion not to do so.

■ Granting or denying an injunction is within the sound discretion of the trial court and will be upheld on appeal absent an abuse of discretion. Discretion is abused when a court exceeds the bounds of reason or contravenes uncontradicted evidence. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].) The trial court determines whether greater injury will result to defendant from granting the injunction than to plaintiff from refusing it and, in making that determination, evaluates the probability of plaintiffs' ultimately prevailing. In the absense of a reasonable probability of success, the court should deny the preliminary injunction. "In the last analysis the

---

[4]The quality of uniqueness alone is not dispositive. The intrinsic values of one-of-a-kind items to the collector may compel injunctive relief, while being irrelevant when those same items repose in a merchant's retail display case.

trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation]." (*Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 242 [342 P.2d 10].)

Here, the court's inquiry was directed only to its determination the condominium units were being marketed as commodities "like an inventory," lumping all four units into that category. It stated its doubts regarding the plaintiffs' chances of success in the following terms: "I do not believe that I'm satisfied that the final outcome of this case would be a permanent injunction against foreclosure." It stated, "[b]ut my sense is that in the final analysis the difference between the parties will indeed be money and that mortgages, trust deeds, are the lifeblood of the real estate industry and the investment industry . . . and if you can't depend upon the fact that you can foreclose under the thing when it is defaulted, because every time somebody raises any question, legitimate or illegitimate, regarding any part of the transaction, the whole thing would be tied up in litigation for years, nobody's going to be able to borrow money, and nobody's going to be able to build anything." He concluded by saying: "I just didn't believe that the kind of showing here on both sides is such as to suggest that a fair, equitable, and just result is more likely to be achieved if I stop these sales than if I let them go, and so therefore the preliminary injunction is denied." Contrary to plaintiffs' claim the trial court did not weigh the potential success of their actions, the trial court received voluminous points and authorities and supporting declarations arguing the merits, and showed its familiarity with those documents by its remarks during the hearing.

Plaintiffs concede the court may deny a preliminary injunction *either* (1) on its finding irreparable injury will not result to the party seeking the injunction, or (2) that the party has failed to demonstrate a reasonable probability of success on the merits. (*People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 21 [141 Cal.Rptr. 20, 569 P.2d 125]; *Forde* v. *Bank of Finance* (1982) 136 Cal.App.3d 38, 42 [186 Cal.Rptr. 272]; *Merandette* v. *City and County of San Francisco* (1979) 88 Cal.App.3d 105, 111 [151 Cal.Rptr. 580].) If, as plaintiffs concede, the court must decide only one of these questions, not both, then the court's finding plaintiffs have not demonstrated a reasonable probability of success, based upon substantial evidence, upholds its discretionary determination to deny the injunction as to all units.

In a practical sense it is appropriate to deny an injunction where there is no showing of reasonable probability of success, even though the foreclosure will create irreparable harm, because there is no justification in delaying that harm where, although irreparable, it is also inevitable.

■ There is substantial evidence to support the trial court's determination plaintiffs have not shown a reasonable likelihood of success in the litigation.
■ In making its finding the trial court may consider the verified complaint and answer, as well as declarations, affidavits and oral testimony. However, when plaintiffs' application is based solely upon a verified complaint, a simple verified answer denying the essential allegations of the complaint often justifies refusing to grant the preliminary injunction unless the allegations of the complaint make out a "strong case for equitable relief." (See discussion in 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 93, p. 1527.)
■ Here, plaintiffs produced nothing except their pleading while Keystone responded with a verified answer denying each allegation, plus specific declarations from four percipient witnesses. We review these responses against the pleaded causes of action.

Plaintiffs' second amended complaint (filed some months after the preliminary injunction denial) lists 12 causes of action. (The 12th cause of action only requests injunctive relief on the assumption some or all of its other causes of action will establish they have sufficient claims to offset the approximately $350,000 of arrearages.) The first, second and third causes of action relate to claimed overpayments of interest amounting to more than $250,000 when Keystone reneged on its agreement to charge interest only on construction monies actually advanced to the borrower, and not on the loan proceeds committed but not yet advanced. Ray Jessen's pleading claims Keystone originally orally agreed to charge interest only on the monies advanced; however, when the loan documents were drawn up he found that promise had not been kept. Because of economic duress he was forced to sign the loan documents under protest and, in any event, charging interest on undisbursed funds is contrary to the language of the document, is unconscionable and unenforceable.

The fourth, fifth and sixth causes of action generally refer to damages for breach of contract claiming Keystone repudiated a 1979 oral agreement to defer action on construction loan defaults and allow Ray Jessen to pay the arrearages from monies to be generated from the imminent sale of 17 units. The pleading alleges Keystone stalled the sales by filing its notice of default, forcing him to pay $31,360 in penalties before it would release the units from its underlying deed of trust and allow the sales to proceed. These penalties are claimed as offsets and, in the sixth cause of action, are the basis for claiming $2 million in punitive damages.

The seventh cause of action requests judicial declaration of the extent of the offsets claimed under the first six causes of action. The eighth and ninth causes of action deal with alleged technical deficiencies in processing the notices of default and notices of sale regarding the 1977 and 1979 trust deeds.

The tenth cause of action relates to unit No. 4 and claims the deed of trust given to secure the takeout loan for that unit is void because Keystone never released it from the 1977 and 1979 construction loan deeds of trust as it promised. The eleventh cause of action is to rescind the purchase of both unit Nos. 2 and 4 and tenders these units back to Keystone in exchange for restoration of all consideration.[5]

Keystone filed declarations on each substantive cause of action:

Patrick Dobiesz attested to the method by which notices of default and election to sell were recorded and served.

Bette Edmunds declared she was involved in each loan transaction. As to the takeout loan on unit No. 4, she attached a copy of a title insurance policy on that unit which makes no mention of the 1977 or 1979 deed of trust, showing the purchasers were insured against such encumbrances. She further certified she personally prepared, executed and recorded the partial reconveyances releasing unit Nos. 2 and 4 from the 1977 trust deeds and, although the 1979 trust deed partial reconveyances on unit Nos. 2 and 4 were not recorded due to a clerical oversight, the notice of sale under the 1979 trust deed did not include unit Nos. 2 or 4. (Supporting documents are in the record.)

Peggy Landgren declared she participated in the 1977 and 1979 construction loans as well as the takeout loan on both unit Nos. 2 and 4. She states unequivocally Keystone never represented to Ray Jessen or his predecessor interest would be charged only upon monies actually advanced from the loan commitment and Keystone was never aware the borrower claimed economic duress forced him to enter into the 1977 lending agreement until served with this lawsuit in 1981, after foreclosure began. Further, she declared Keystone and the buyers of unit Nos. 2 and 4 never discussed whether the takeout loan deeds of trust on those units would become effective before the 1977 and 1979 deeds of trust were reconveyed. She declares all plaintiffs in the present action are employees of Jessen Development Company and are holding each unit for resale and investment.

James Clark declares he also participated in the 1977, 1979 and each 1980 takeout transaction, and the advances and modifications to the 1977 and 1979 construction loans. He also declares Keystone never represented interest would be charged only on the actual advances, nor discussed whether the takeout loan deeds of trust would become effective before reconveyance of the 1977 and 1979 trust deeds.

---

[5]Relief under the 11th cause of action (rescission) obviously seeks only money consideration and a judgment in favor of plaintiffs will not be diminished by the loss of the units through foreclosure.

Based upon the showing to the trial court, we find no abuse of discretion.

Judgment affirmed. Stay vacated.

Wiener, Acting P. J., and Butler, J., concurred.

A petition for a rehearing was denied May 17, 1983, and appellants' petition for a hearing by the Supreme Court was denied July 13, 1983.