Filed 5/26/21 Simon v. Hathaway CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT SIMON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>GALEN HATHAWAY et al.,<br><br>        Defendants and Respondents. | A160305<br><br>(Mendocino County<br>Super. Ct. No. CVG 09-54636) |

This is the second appeal in this case arising out of a note and deed of trust on an 82-acre parcel of Mendocino property (Property) in which appellant Robert Simon has an ownership interest.[1] Respondents Galen Hathaway and Charles Ream, who together accumulated a 100 percent ownership interest in the note, cross-complained for an accounting, judicial foreclosure, and declaratory relief.

In the first appeal, which we treated as a petition for writ of mandate, we concluded Simon was not liable under certain modifications made to the note without his assent, rejected his statute of limitations defense to

---

[1] Debra and Tashina Simon, Simon's former wife and daughter, respectively, also have partial ownership interests in the property and are plaintiffs. However, they did not participate in the prior appeal, nor are they appellants in the instant appeal.

1

enforcement of the note, and calculated the total amount he owed under the note. We issued a writ of mandate directing the trial court to enter a modified judgment in accordance with our opinion, which the court did.

Simon now appeals from an order denying preliminary injunctive relief to forestall Hathaway and Ream from proceeding with nonjudicial foreclosure of the note and deed of trust. We affirm.

## BACKGROUND

We briefly summarize the underlying facts, which we set forth in our opinion in Simon's prior appeal.[2] (*Simon v. Superior Court, supra,* A151810.)[3]

"This case involves an 82-acre parcel in Mendocino County, once owned entirely by plaintiff Robert R. Simon. When Simon got into financial difficulty, he sold an undivided 50 percent interest in the property to defendants Charles and Bedar Johnson. The transaction included an agreement that Simon and the Johnsons would attempt to subdivide the parcel into two lots. They were aware, however, that a subdivision was unlikely, since the parcel was below the minimum required under local

---

[2] We treated Simon's first appeal as a petition for writ of mandate due to "serious doubt" about whether his appeal was "from a viable 'interlocutory judgment.'" (*Simon v. Superior Court* (May 14, 2019, A151810) [nonpub. opn.].)

[3] We previously granted Simon's request to take judicial notice of that opinion. We now grant Simon's request for judicial notice of the reporter's transcript filed in the earlier appeal and respondents' cross-complaint. We also grant respondents' request for judicial notice of 10 documents, all of which may be judicially noticed as " [r]ecords of . . . any court of this state." (Evid. Code, § 452, subd. (d).) " 'We may take judicial notice of the existence of judicial opinions and court documents, along with the truth of the results reached—in documents such as orders, statements of decision, and judgments—but cannot take judicial notice of the truth of hearsay statements in decisions or court files. . . .' " (*Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 382.)

planning laws.  So they also agreed that, after two years, Simon could commence an action to partition the property in kind—thus, the genesis of the instant proceeding."  (*Simon v. Superior Court, supra,* A151810.)

"In the meantime, the financing deal the parties had arranged for the Johnsons' purchase of a 50 percent interest had become fairly complicated. Simon and the Johnsons agreed to jointly procure a loan of $ 202,500, the bulk of which was allocated to the Johnsons' purchase of an interest in the property, the remainder of which was allocated to loan fees and paying off some of Simon's personal debts.  Unable to secure conventional financing, they obtained a privately funded loan through a broker who had once worked for Simon.  The note provided for interest-only payments, followed by a balloon payment of the principal and any unpaid interest.  The note was secured by a deed of trust.  After the balloon payment came due, the Johnsons, contrary to their agreement with Simon, unilaterally agreed to two seriatim modifications of the note.  Neither the Johnsons nor the owners of the debt ever obtained Simon's agreement to or signature on either modification."  (*Simon v. Superior Court, supra,* A151810.)  "After the new maturity date lapsed, the Johnsons . . . sold their 50 percent interest in the property to defendant Rodney DeFazio."  (*Ibid.*)

"As pleadings proliferated in the partition action, the owners of the debt, which included defendants Galen Hathaway and Charles Ream, appeared and filed cross-complaints for an accounting, judicial foreclosure and declaratory relief."  (*Simon v. Superior Court, supra,* A151810.)  "By the time of trial, Hathaway and Ream, together, owned 100 percent of the interest in the note. The two agreed, between themselves, that Hathaway held a 70 percent interest, and Ream, a 30 percent interest."  (*Ibid.*)

"Eventually the trial court held a bifurcated trial to determine the ownership interests in the property and the amounts owed to Hathaway and Ream, who by then were the sole owners of the note." (*Simon v. Superior Court, supra,* A151810.)  Because there was no dispute as to the ownership interests in the real property (the Simons owned 50 percent and DeFazio owned 50 percent), the focus of the bifurcated trial was the amount owed on the debt held by Hathaway and Ream.  (*Ibid.*)

"The court ruled the second modification was the operative financial document, even as to Simon.  It then found the principal amount owed was $ 314,000 and the accrued interest owed was $ 282,076.66 (as of March 1, 2017), for a grand total of $596,076.66, and that interest was continuing to accrue at $ 2,878.33 per month.  The court declined to consider Simon's statute of limitations defense based on his claim that he was bound only by the terms of the original note and not by the modifications unilaterally obtained by the Johnsons." (*Simon v. Superior Court, supra,* A151810.)

We concluded "the trial court erred in ruling Simon was bound by the modifications to the note, but [we] reject his statute of limitations defense that he claims flows from that conclusion.  Our conclusion as to the basis of Simon's liability does, however, require modification as to the amount he owes, and we therefore order that a writ issue requiring the trial court to vacate and modify certain portions of the 'interlocutory judgment.' " (*Simon v. Superior Court, supra,* A151810.)  We concluded the amount Simon owed was $384,412.50, which consisted of the unpaid principal balance of $202,500 plus simple interest of $178,200.00 for eight years, plus $3,712.50 in interest for two months.  (*Ibid.*)

We ordered that a peremptory writ of mandate issue directing the trial court to vacate its interlocutory judgment and to enter a new and different

4

judgment in accordance with the opinion. (*Simon v. Superior Court, supra,* A151810.)

The court duly entered a modified interlocutory judgment in October 2019 stating Simon owed, as of April 1, 2017, $384,402.50 in principal and interest under the original note and deed of trust held by Hathaway and Ream. The modified judgment further stated "[i]nterest shall continue to accrue on the note in the monthly amount of $1,856.25 ($22,275.00 per year), commencing on April 1, 2017. Interest on the note does not compound." It also stated, as had the original interlocutory judgment, that "Hathaway and Ream intend to proceed with non-judicial foreclosure of the Hathaway/Ream Trust Deed."

Hathaway and Ream then commenced nonjudicial foreclosure proceedings, and in November 2019 filed a notice of default and election to sell under the deed of trust.[4] Simon, along with Debra Simon and Tashina Simon, sought a "preliminary injunction and/or temporary restraining order of foreclosure action, and order enjoining defendant's pursuit of non-judicial foreclosure." (Capitalization omitted.) They challenged "specific beneficiar[ies'] assignment of interests in the note as potentially void and request[ed] a preliminary injunction to evaluate the validity," and claimed "[f]ailure to prove absolute ownership of the debt should result in a permanent injunction of foreclosure or court forced settlement."

---

[4] "When the trustor defaults in its obligations under the promissory note and deed of trust, the beneficiary ordinarily has two methods to enforce the security interest of the deed of trust. [Citation.] The beneficiary may bring an action for judicial foreclosure ([Code Civ. Proc.,] § 725a) or pursue a nonjudicial foreclosure, also known as a trustee's sale, pursuant to the power of sale granted in the deed of trust (Civ. Code, §§ 2924-2924l)." (*Robin v. Crowell* (2020) 55 Cal.App.5th 727, 743.)

5

The trial court denied the requested relief, stating "it has been determined that the loan subject to foreclosure is the responsibility of Mr. Simon. In addition, Debra and Tashina Simon did not participate in the appeal that was filed after the bifurcated trial in this matter and have waived any argument regarding the interests of Hathaway and Ream." The court, nevertheless, stayed "the foreclosure proceedings until 60 days after the local governing body declares that the Shelter In Place Order related to the COVID-19 pandemic is lifted." It also amended the October 2019 modified interlocutory judgment "to reflect the correct percentages of ownership of the subject property by the Simons as follows: Robert R. Simon, and undivided 37.50% ownership; Debra Simon an undivided 6.25% ownership and Tashina Simon an undivided 6.25% ownership."

## DISCUSSION

Simon maintains the trial court erred in denying preliminary injunctive relief to prevent foreclosure, claiming he is likely to succeed on the merits of his partition claim and would suffer irreparable harm if injunctive relief is not granted.

"Granting or denying an injunction is within the sound discretion of the trial court and will be upheld on appeal absent an abuse of discretion. Discretion is abused when a court exceeds the bounds of reason or contravenes uncontradicted evidence." (*Jessen v. Keystone Savings & Loan Assn.* (1983) 142 Cal.App.3d 454, 458 (*Jessen*).)

"In exercising its discretion, the court must consider 'two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction. [Citation.]' (*Hunt v. Superior Court* (1999) 21 Cal.4th 984 . . .) 'A trial court may not grant a preliminary injunction, regardless of

6

the balance of interim harm, unless there is some possibility that the plaintiff will ultimately prevail on the merits of the claim. [Citation.] "Where there is . . . no likelihood that the plaintiff will prevail, an injunction favoring the plaintiff serves no valid purpose and can only cause needless harm." [Citation.]'" (*County of Los Angeles Dept. of Public Health v. Superior Court* (2021) 61 Cal.App.5th 478, 486–487, italics omitted.)

### *Validity of Hathaway's and Ream's Interests*

Simon first claims he is likely to succeed in preventing foreclosure because he "presented compelling evidence of defective instruments regarding conveyance of the deed of trust, including void assignment conveying no known interest, varying interest rates between beneficiaries, and payment to beneficiary Petty[5] of over three times the amount of his original investment." Simon proffered this "evidence" by way of exhibits and declarations filed in support of his request for preliminary injunctive relief.

Simon's presentation of these materials *post*-interlocutory judgment, comes far too late in the day—the issues he now raises have either been forfeited or were decided against him in connection with the first appeal.

To begin with, Simon did not, in either his complaint or at trial, challenge the assertedly ineffective assignments. "[I]if an appellant wishes to argue a point on appeal, it must first make a record by raising the point in the trial court." (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1433.) "'"[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." "[W]e ignore

---

[5] Simon does not explain how "varying interest rates between beneficiaries" or payment to Petty of more than his original investment, even if true, demonstrated "defective instruments" or void assignments.

7

arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. . . ." ' " (*Gonzalez v. County of Los Angeles* (2004) 122 Cal.App.4th 1124, 1131.)

In his complaint, Simon alleged Hathaway and Ream, as well as other defendants, "own[ed] interests" in the deed of trust. At trial, Hathaway and Ream testified as to how they acquired their collective, one hundred percent ownership interest the note and deed of trust. And at the close of trial, Simon requested a statement of decision as to five issues, none of which concerned the assignments to Hathaway and Ream or the validity of their interest in the note and trust deed. The court then entered an interlocutory judgment that "Defendants Galen R. Hathaway and Charles Ream together hold 100% of the fractional interests in the promissory note dated November 9, 2001, in the original amount of $202,500, which note is secured by a deed of trust. . . . Pursuant to an agreement between them . . . Hathaway's interest in said note and deed of trust is 70%, and Ream's is 30%."

Although Simon appealed from the interlocutory judgment, he did not raise any issue as to the assignments to Hathaway or Ream, or their "ownership of the debt." In fact, Simon conceded in his opening brief that "Hathaway and Ream together now hold 100% of the fractional interests in the original Note." " '[While] briefs and argument are outside the record, they are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "[6] (*DeRose v. Carswell* (1987) 196 Cal.App.3d

---

[6] Simon, himself, made this point elsewhere in his opening brief, stating "Allegations made in a party's pleadings constitute judicial admissions. As admissions, they are conclusive concessions of the truth of the matter and remove the matter from the issues."

1011, 1019, fn. 3, superseded by statute on another ground as stated in *Ramona v. Superior Court* (1997) 57 Cal.App.4th 107, 112, fn. 6.)

Given Simon's concessions and the trial court's findings, we thus stated in our prior opinion, "By the time of trial, Hathaway and Ream, together, owned 100 percent of the interest in the note."

In short, Simon is wholly foreclosed, at this juncture, from mounting a challenge to the validity of Hathaway's and Ream's ownership interest in the note and deed of trust.

### *Partition*

Simon also maintains the trial court erred in "declin[ing] to order partition" in its modified interlocutory judgment. He maintains this court "has the authority to review the entirety of the litigation based on its merits and determine if the trial court abused its discretion in entering a new Judgment, on October 19, 2019, that contravenes [this court's] writ of mandate an opinion on cotenant debts."

It is hardly a surprise that the trial court did not order partition in either the original interlocutory judgment or the modified judgment on remand, since prior to trial, Simon waived any claim regarding partition. Indeed, in his partial opposition to Hathaway and Ream's motion to bifurcate, Simon unequivocally stated he objected "to any hearing on the Partition cause of action as . . . plaintiffs *no longer intend to pursue such relief*. . . . [¶] Trial should be held solely on [Hathaway and Ream's] request for 'accounting' and declaratory relief as well as plaintiffs' unjust enrichment claims. . . ." (Italics added.)

Nor, in turn, did we, in our prior opinion, direct any change to the interlocutory judgment in this regard.

In short, Simon long ago gave up any claim for partition.

***Irreparable Harm***

Simon next claims he will suffer "irreparable harm" because he will lose his "home of 43 years" if an injunction is not granted.

Relying on *Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, Simon asserts " '[t]he uniqueness of residential property prevents its' taking ever being adequately compensated by money.' " (Italics omitted.) That case, however, simply sets forth the longstanding principle that "a damage award is generally an inadequate remedy for a breach of real estate contract, and therefore courts routinely grant a plaintiff's request for specific performance." (*Id.* at pp. 472–473.)

In *Jessen, supra,* 142 Cal.App.3d 454, the court expressly rejected the claim Simon advances—that "an injunction is required simply because it is real property upon which foreclosure is sought, and the uniqueness of real property prevents its taking ever being adequately compensated by money." (*Id.* at pp. 457–458.) As the court observed, the presumption set forth in Civil Code section 3387—that "the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation"— pertains "to specific[ally] enforcing contracts for conveyance of real property." (*Id.* at p. 458.) As to foreclosures, *Jessen* explained, "In a practical sense it is appropriate to deny an injunction where there is no showing of reasonable probability of success, even though the foreclosure will create irreparable harm, because there is no justification in delaying that harm where, although irreparable, it is also inevitable." (*Id.* at p. 459; see *Choice-in-Education League v. Los Angeles Unified School Dist.* (1993) 17 Cal.App.4th 415, 422.)

Simon similarly maintains that, in weighing the hardship to Hathaway and Ream against the claimed "irreparable harm" to him, the "balance[ing] of equities" favors him. He asserts he "is 73 with severe lung disease" and

10

would be placed "in the path of dire physical harm" if "forced from his home and shelter in the midst of a deadly pandemic." Simon claims that, in contrast, "respondents will suffer only the harm of further delay."

To begin with, the relative hardships, alone, cannot overcome the lack of any prospect of prevailing. Furthermore, Hathaway and Ream have been suffering the harm of delay for over a decade. They have received no payments on the note since 2009. And they are, themselves, in their eighties and in ill health. Indeed, we granted Hathaway and Ream calendar preference on that basis. Nor will Simon be forced from his home during a pandemic: the trial court stayed "the foreclosure proceedings until 60 days after the local governing body declares that the Shelter In Place Order related to the COVID-19 pandemic is lifted."

In sum, Simon has not shown that the trial court's denial of injunctive relief was an abuse of discretion.[7]

## DISPOSITION

The appealed order is AFFIRMED. Costs on appeal to respondents.[8]

---

[7] For the first time in his reply brief, Simon raises numerous other claims of error as to the modified judgment, including that it "contradicts testimonial evidence," was based on a "[f]ailure to hear all evidence," was in excess of the court's jurisdiction, and was a denial of due process. (Boldface omitted.) Even if Simon had raised these issues in the trial court, which he did not, we decline to consider points raised for the first time in a reply brief. (*Owens v. City of Oakland Housing, Residential Rent & Relocation Board* (2020) 49 Cal.App.5th 739, 746.)

[8] Respondents assert this court should also award them attorney fees incurred on appeal, relying on provisions in the "trust deed signed by Simon in 2001." However, any motion for contractual attorney fees is more appropriately brought in the trial court pursuant to California Rules of Court, rule 3.1702(c)(1).

 

                                   _____

                                   Banke, J.


We concur:


_____

Humes, P.J.


_____

Margulies, J.


A160305, Simon v.Hathaway