Filed 6/4/25  Gupta v. De Martini CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PUJA GUPTA, <br><br> Plaintiff, Cross-defendant and Respondent, <br><br> v. <br><br> LORING DE MARTINI, <br><br> Defendant, Cross-complainant and Appellant. | A171785 <br><br> (San Mateo County Super. Ct. No. 22-CIV-02582) |

Puja Gupta, a real estate developer, entered into a purchase agreement (the Agreement) to buy commercial property owned by Loring De Martini. The parties then spent four years engaged in disputes and arbitration related to the Agreement, culminating in the complaint and cross-complaint underlying this appeal.  A bench trial took place, which was not transcribed, and the trial court entered judgment in favor of Gupta as to both actions.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

We recount only the background information relevant to our consideration of the issues on appeal.

1

*The Agreement and Addenda*

In January 2020, Gupta and De Martini entered into the Agreement for Gupta to purchase four parcels of land (the property) owned by De Martini and located in Belmont (the City) for $6 million, all cash. On the site of the property was The Van's Restaurant, which Gupta intended to demolish pending approval by the City.

Gupta was required to make an "Initial Deposit" of $150,000 into escrow and timely made this deposit. The gravamen of the dispute before us is the allegation that Gupta did not pay an "Additional Deposit" of $850,000 into escrow, as required by Addendum No. 1 to the Agreement, and close escrow.

Addendum No. 1 required Gupta "remove any and all contingencies by March 31, 2020 and provide an Additional Deposit of $850,000.00 or terminate the Purchase Contract, subject to Section 6." Both Addendum No. 1 and the Agreement required close of escrow to be April 30, 2020, but section 5 of Addendum No. 1 qualified the close of escrow date with the phrase "except as provided in Section 6 below." Section 6 reads as follows:

> "6 – Notwithstanding the foregoing, removal of contingencies, release of Initial and Additional Deposits and Close of Escrow *shall be contingent upon* completion of the historical resources review including submittal of historical resources report [to] the . . . City of Belmont, completion of City's peer review process of the report and *final determination* that The Van's Restaurant is not historical and can be demolished." (Italics added.)

The Agreement also stated "[t]ime is of the essence," without additional explanation.

Two months later, in March 2020, the parties executed Addendum No. 2 to the Agreement. This addendum extended the time for Gupta to remove contingencies and make the $850,000 Additional Deposit from March

2

31, 2020 to May 15, 2020. It also extended the date of the close of escrow to May 31, 2020 "per Paragraph 5 of Addendum No. 1," which in turn qualified the close of escrow date "as provided in Section 6."

In April 2020, the parties executed a "Seller Financing Addendum and Disclosure" under which De Martini agreed to finance $2,000,000 on an interest-only basis for two years, with a balloon payment of $2,000,000 due on June 30, 2022.

*Arbitration Proceedings*

Gupta did not make the Additional Deposit by May 15, 2020 (the deadline as extended by Addendum No. 2) on the basis that the condition precedent, specifically a final determination as to The Van's Restaurant, had not yet occurred. De Martini took the position that Gupta had terminated the Agreement.

Gupta initiated arbitration proceedings under the terms of the Agreement. Gupta sought a declaratory judgment that her obligation to pay the Additional Deposit and close escrow had not yet passed as the City had not issued its final determination in the historical resources review process for the restaurant. De Martini cross-claimed for a determination that the Agreement had been terminated or, alternatively, for an order requiring Gupta to pay the Additional Deposit.

Arbitration took place in December 2020. A final arbitration award finding in favor of Gupta was issued on March 26, 2021. The award found no final determination by the City had been made as to the historical status of The Van's Restaurant and, therefore, the Additional Deposit was not yet required. The award included a declaratory judgment providing that Gupta retained full rights to complete the purchase of the property on the terms set out in the Agreement; Gupta was required to diligently continue

3

commercially reasonable efforts to facilitate completion of the City's historical review; and De Martini was required to cooperate in facilitating that historical review, including, but not limited to, by "providing relevant documentation, records and/or signatures required by the [C]ity."

On October 5, 2021, the trial court confirmed the final arbitration award as the judgment of the court.

*Complaint and Cross-Complaint*

In June 2022, Gupta filed a complaint against De Martini for specific performance and injunctive relief. Gupta alleged De Martini repeatedly refused to sign documents needed to complete the City's historical review of The Van's Restaurant. Gupta averred she had performed all her obligations under the Agreement, other than those contingent on De Martini's performance that had not yet occurred, and she remained willing and able to perform her remaining contingent obligations. Gupta argued specific performance was appropriate as the property was unique in character and, therefore, other remedies (such as monetary damages) would be inadequate. As relief, Gupta sought an order requiring De Martini to execute the necessary documents and complete the terms of sale under the Agreement.

In September 2022, De Martini filed a cross-complaint seeking a declaratory judgment that the Agreement and Gupta's associated rights had been canceled by her failure to timely make the Additional Deposit and close escrow. De Martini contended the City made its final determination in April 2021 that The Van's Restaurant was not historical and could be demolished and that both parties were advised of that determination. However, when he demanded in May 2022 that Gupta make the Additional Deposit and close escrow, she failed to do so and instead filed her complaint. De Martini also filed a denial of the allegations in Gupta's complaint on the same bases.

4

De Martini's assertion that the historical review process concluded in 2021 was premised on letters sent to the arbitrator by Carlos de Melo, the City's community development director, in April and May 2021. In those letters, de Melo stated a consultant retained by the City conducted a historic resource analysis of The Van's Restaurant and issued a report in April 2021 concluding the restaurant should not be deemed historic and could be demolished subject to certain conditions. De Melo also informed the arbitrator that, as of the dates of those letters, The Van's Restaurant was not classified as historic and demolition could be pursued; however, such demolition was subject to the conditions in the consultant's report and the April letter.[1] In the May 2021 letter, de Melo stated: "The City of Belmont's historical review process with regard to The Van's Restaurant is complete."

Gupta filed an answer to De Martini's cross-complaint denying the allegations and generally reasserting the claims from her complaint.

*Bench Trial*

A bench trial was held on August 28, 2024. The trial was not transcribed and there was no settled statement. However, the record reveals the following.

---

[1] Specifically, the April 2021 letter provided:
"Demolition can be pursued for the building with the caveat that a permit will not issue unless and until the owner: [¶] 1. Secures all required development review entitlements and environmental clearance for a redeveloped site; and, [¶] 2. Obtains requisite demolition and construction permits associated with the proposed replacement buildings; and, [¶] 3. Please note: Any demolition permit issuance (by any current or future property owner) will require a demolition scope of work that complies with the conditions outlined in the April 2, 2021 [consultant's] report; the City of Belmont also reserves the right to impose any additional conditions on the issuance of a demolition permit as appropriate depending on the development documents presented."

At the start of trial, the court granted an unopposed motion in limine by Gupta to exclude any evidence, testimony, or argument relating to issues previously arbitrated between the parties on the grounds of issue preclusion.

Among the exhibits admitted at trial were the Agreement and addenda; the April 2021 consultant's report; the April and May 2021 letters from de Melo; and the October 2021 judgment confirming the final arbitration award.

De Melo, Gupta, and De Martini provided the sole testimony.

*Trial Court's Decision*

On October 9, 2024, the trial court issued a statement of decision finding in Gupta's favor as to both the complaint and cross-complaint, as follows.

Based on the unambiguous language of Addendum No. 1 and the binding conclusions in the final arbitration award, the court found payment of the Additional Deposit and close of escrow were contingent upon the City's " 'final determination' " that The Van's Restaurant was not historic and could be demolished. The court interpreted the Agreement and Addendum No. 1 to provide an extension of time to perform the obligations therein until that final determination was made, despite the " 'time is of the essence' " clause and the specific dates for close of escrow listed in the Agreement.

The court found that, since the 2021 judgment confirming the final arbitration award, Gupta had acted diligently in attempting to obtain the " 'final determination' " from the City under the Agreement. To that end, Gupta met with de Melo, who told her she needed to provide a complete development application—which required the signature of the current property owner (De Martini)—in order for the City Council to determine if further steps were needed for any demolition to be permitted and under what conditions. Gupta informed De Martini of the development application

6

requirement and asked him to sign it at least four times to be able to obtain the " 'final determination' " described in Addendum No. 1, but he refused to do so.

De Martini acknowledged he did not sign the documents for the development application requested by Gupta. De Martini believed the historic review was complete and the restaurant could be demolished based on the consultant's and de Melo's conclusion that the property was not historic.

Critically, de Melo testified that the City Council "has not made a final determination as to the historical resources of the property, including whether The Van's Restaurant is historical and whether or under what conditions it can be demolished, because an application executed by the current property owner has not been submitted for the City Council to review." It was up to the City Council, not de Melo, to provide that approval. De Melo's opinion as to the historical status of the property and whether any structures could be demolished was not a " 'final' " determination and would only serve as a recommendation whenever a development application is actually submitted for the City Council's consideration—which had not yet occurred due to De Martini's refusal to cooperate with Gupta.[2] Hence, the

_____

[2] De Melo raised an alternative route for Gupta to obtain approval by requesting the City Council have the property classified as historic in the hopes that a contrary finding were reached. However, de Melo had never seen that type of request made in 24 years working for the City.

The court declined to find that this proferred alternative relieved De Martini of his obligation to sign documents for the development application because: (1) the court would not force Gupta to go on record representing that the property was historic through a process that had not been utilized in 24 years and when she sought the opposite conclusion; and (2) there was no evidence that this alternate route would lead to a demolition permit as de Melo testified a demolition permit would not issue until the required

7

court found that de Melo's opinion in the 2021 letters based on the consultant's report was not relevant.

Accordingly, the court found the " 'final determination' " contemplated in Addendum No. 1 had not been made and concluded Gupta was entitled to specific performance by requiring De Martini to cooperate with the completion of the historical review process. In reaching that conclusion, the court found the contractual terms were sufficiently definite to order specific performance and that Gupta remained ready, willing, and able to perform her obligations. As to the cross-complaint, the court found the Agreement had not been canceled based on its prior analysis of the contract interpretation issue and denied De Martini's request for declaratory relief.

On October 15, 2024, the court entered judgment in favor of Gupta and against De Martini. The judgment included an injunction requiring De Martini's specific performance as follows: cooperate with the City's historical review process for The Van's Restaurant, including providing his signature on any documents required by the City; execute the development application documents requiring his signature as the current property owner and return the executed documents within 10 days; and promptly and reasonably comply with any further cooperation that may be required of him by the City in order to reach a final determination as to the restaurant. De Martini appealed.

## DISCUSSION

De Martini challenges the trial court's decision to grant Gupta's request for specific performance and its denial of his request for declaratory relief. We find these challenges to be without merit.

---

development review process took place. The court noted Addendum No. 1 required not just a determination as to the restaurant's historic status but also a determination of its ability to be demolished.

8

## I. The Court Did Not Err by Ordering Specific Performance

De Martini argues Gupta was not entitled to a remedy of specific performance requiring him to execute the development application documents. He grounds this claim on two arguments. First, De Martini contends the court erred in finding Gupta had performed, and was financially able to perform, all her obligations under the Agreement. Second, he avers it was not readily ascertainable from the terms of the Agreement that he was required to sign the documents.

Reviewing the court's grant of specific performance for abuse of discretion (*Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 472 (*Real Estate Analytics*)), we address each argument in turn.

### A. De Martini Does Not Show Gupta Failed to, or Was Unable to, Perform Her Obligations

De Martini asserts the trial court erred in finding both that Gupta had performed her obligations under the Agreement and that she was ready to perform her financial obligations.

We begin by noting the fundamental principle that a trial court judgment is ordinarily presumed correct and De Martini, as the appellant, has the burden to demonstrate that the court committed reversible error based on the record presented to us. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).) As a corollary to this principle, De Martini also has the burden of providing an adequate record for meaningful appellate review of an issue, and the failure to do so requires the issue to be resolved against him. (*Id.* at p. 609.)

De Martini has not provided a transcript of the trial proceedings or a settled statement. Accordingly, to the extent the court's determinations relied on its resolution of testimony presented at trial, the record is

inadequate for meaningful review and they are presumed correct. (See *Jameson*, *supra*, 5 Cal.5th at pp. 608–609.)

### 1. Gupta Did Not Fail to Perform Her Obligations Under the Agreement

De Martini contends Gupta was not entitled to specific performance on the basis that she failed to perform all the conditions precedent to the Agreement within the timeframes set forth therein. He argues she was in breach of the Agreement for the same reasons. We are not convinced.

"[A] party to a contract 'may not obtain specific performance unless [s]he has performed . . . all of the conditions precedent required of [her] by the terms of the contract.' " (*People v. Palacios* (2021) 67 Cal.App.5th 184, 192; Civ. Code, § 3392.)

De Martini's argument is premised on his assertion that the court misinterpreted the contractual language. He avers the trial court erred by "converting Addendum No. 1, ¶ 6, into the exclusive closing event timing clause" in the Agreement and failing to give effect to the following other provisions: "[t]ime is of the essence"; the original April 30, 2020 date to close escrow; Addendum No. 2's extension of the close of escrow "to May 31, 2020 per Paragraph 5 of Addendum No. 1" and extension of the time for Gupta's "performance items contained in Paragraph 4 of Addendum No. 1" to May 15, 2020; and the timeframe for a two-year loan with a balloon payment due on June 30, 2022 under the Seller Financing Addendum and Disclosure.

As an initial matter, we agree with Gupta that, to the extent De Martini seeks to relitigate the issues already adjudicated in arbitration and in the trial court's confirming judgment (which De Martini did not appeal), he may not do so now. (See, e.g., *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 [issue preclusion prohibits relitigating issues argued and

10

decided in a previous case even if second case raises different cause of action].)  Indeed, the trial court found it was bound by the arbitrator's interpretation of the Agreement based on its grant of Gupta's motion in limine—which the minute order reflects De Martini did not oppose—finding De Martini was precluded from relitigating issues previously arbitrated and confirmed by the court's judgment.

As a result, De Martini may not challenge the court's interpretation of the Agreement to the extent it was based on a finding that it was bound by the arbitrator's determination that "the [A]greement did not require escrow to close by May 31, 2020 if the historic review had not been completed with a final determination made by the City and the City has made no final determination."  (See *DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 824.)

Insofar as De Martini seeks to raise a distinct claim that the trial court erroneously interpreted the Agreement by failing to give effect to the other provisions of the Agreement he cites, we find no error in the court's conclusion that, notwithstanding the other provisions in the Agreement, Addendum No. 1 specifically provides that the exclusive triggering event for the close of escrow, and for Gupta's obligations to remove contingencies and make the additional $850,000 deposit, was "a final determination by the City that [T]he Van's [Restaurant] was not historic and could be demolished."

This conclusion is based on the plain language of Addendum No. 1, which makes Gupta's obligations and the close of escrow subject to Section 6, which in turn expressly provides: "Notwithstanding the foregoing, removal of contingencies, release of Initial and Additional Deposits and Close of Escrow *shall be contingent upon . . .* [a] final determination that The Van's Restaurant is not historical and can be demolished."  (Italics added.)  It is of

11

no moment that Addendum No. 2 provided other dates, as those provisions were also explicitly tethered to Addendum No. 1, which was contingent on a final determination by the City as to The Van's Restaurant. Nor are we persuaded that a clause stating "[t]ime is of the essence," without more, or a seller financing addendum setting forth when a balloon payment was due, overrides the clear and unambiguous language in Addendum No. 1.

Therefore, we reject De Martini's assertion that Gupta failed to meet her obligations under the Agreement, or breached it, "by not consummating the [Agreement] within the contractual timeframe." (Boldface & italics omitted.) Instead, the timeframe for Gupta's obligations to remove contingencies, make the Additional Deposit, and close escrow has not yet occurred as the court found the evidence showed the triggering event for those obligations—a "final determination" by the City as to The Van's Restaurant—has not yet occurred. We note De Martini presents no argument or evidence that the requisite "final determination" has been made.

In addition, the reason that Gupta's obligations have not yet come due is specifically because of De Martini's refusal to sign the development application—which the court found was a necessary step for the City to issue the required final determination—despite Gupta's "diligent[]" efforts to have De Martini do so and complete the historical review.[3] Accordingly, Gupta did not fail to comply with her obligations under the Agreement.

---

[3] We also reject De Martini's suggestion that Gupta is to blame for failing to obtain the final determination by not seeking out the alternative route raised by de Melo at trial, which he stated had never been pursued in his 24 years at the City. Given Gupta's repeated attempts to have De Martini sign the development application so the City could complete the review through the standard procedure and De Martini's refusal to do so, the trial court reasonably found this alternative did not relieve De Martini of his obligation to sign the documents.

12

## 2. The Record Does Not Show Gupta Was Not Financially Able to Perform

De Martini further challenges the court's determination that Gupta remained able to financially perform her obligations under the Agreement.

To obtain specific performance, a plaintiff must show that she was ready, willing, and able to perform, both when the contract was entered into and during the specific performance action. (*Ninety Nine Investments, LTD. v. Overseas Courier Service (Singapore) Private, LTD.* (2003) 113 Cal.App.4th 1118, 1126 (*Ninety Nine Investments*).)

The trial court found Gupta had met her burden of proof to show she was ready, willing, and able to perform, stating:

> "Gupta has presented substantial evidence through her testimony that she was at the time she entered into the contract, and has remained, ready, willing and able to purchase the property, and has only been prevented from doing so by De Martini's refusal to meet his own obligations which serve as conditions precedent to her performance. Although De Martini challenged her financial wherewithal, she remained firm that she could finance the transaction, provided the balance in accounts and testified about the loan she could obtain. De Martini did not provide any substantial evidence to refute Gupta's testimony."

Here, De Martini's effort to challenge the court's finding as to Gupta's financial readiness to perform is undermined by his failure to provide an adequate record to permit meaningful appellate review of the trial court's assessment of the evidence. (See *Jameson*, *supra*, 5 Cal.5th at pp. 608–609.) Although he points to various documents to contest Gupta's ability to finance the purchase, the trial court expressly based its finding on the substantial evidence *presented through Gupta's testimony* that she was and remained ready and able to purchase the property. The court further found that De Martini failed to counter Gupta's testimony with substantial evidence

13

provided at trial. As the record provided by De Martini does not include a trial transcript to allow us to assess the testimony underpinning the court's findings, we must presume they are correct. (See *ibid.*)

## B. The Terms of the Agreement Are Sufficiently Certain to Permit Specific Performance

De Martini also challenges the court's remedy of specific performance on the ground that the terms of the Agreement were not sufficiently certain.

To be entitled to specific performance, a plaintiff must generally show, among other factors, that the "contractual terms . . . are sufficiently definite to enable the court to know what it is to enforce." (*Real Estate Analytics*, *supra*, 160 Cal.App.4th at p. 472; accord, *Patel v. Liebermensch* (2008) 45 Cal.4th 344, 349, citing Civ. Code, § 3390, former subd. 5 [agreement cannot be specifically enforced where its terms "are not sufficiently certain to make the precise act which is to be done clearly ascertainable"].) In determining whether the material factors in a contract meet that threshold, the law favors carrying out the reasonable intentions of the parties, if they can be ascertained, through the enforcement of contracts and disfavors destroying contracts because of uncertainty. (*Patel*, at p. 349; *Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 766.)

The covenant of good faith and fair dealing, which is implied by law in all contracts, "requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes." (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1244.) Therefore, " '[i]f the cooperation of the other party is necessary for successful performance of an obligation,' " there is an implied promise by that other party " 'to *give that cooperation,* and *not to do anything which prevents realization of the fruits of performance.*' " (*Ninety Nine Investments*, *supra*,

113 Cal.App.4th at p. 1131; 1 Witkin, Summary of Cal. Law (11th ed. 2025) Contracts, § 822.)

The trial court found the evidence provided "clear steps that De Martini must follow to complete the transaction pursuant to the terms of the purchase agreement" and, therefore, Gupta met her burden to show the terms of the Agreement were sufficiently definite to order specific performance. The court also found the judgment confirming the final arbitration award, which clearly required De Martini to execute whatever documents the City may need to complete the historic resources determination for the restaurant, clarified De Martini's obligations under the Agreement.

De Martini asserts the Agreement is "entirely devoid" (boldface & italics omitted) of any requirement that he execute the development application because the Agreement did not mention, expressly or impliedly, the words "development application." We disagree.

As we already established, Addendum No. 1 expressly made execution of the Agreement (via the release of the additional deposits, release of contingencies, and close of escrow) "contingent upon . . . [a] final determination that The Van's Restaurant is not historical and can be demolished." Given that a final determination regarding The Van's Restaurant was an explicit and essential step needed to accomplish the Agreement's purpose of selling the property to Gupta, the trial court did not err in finding De Martini was required to "do everything the contract presupposes [he] will do to accomplish" that purpose. (*Thrifty Payless, Inc. v. The Americana at Brand, LLC, supra*, 218 Cal.App.4th at p. 1244.)

In particular, as the trial court found, the Agreement presupposed that De Martini would cooperate in facilitating the historical review—including by

15

executing the documents required by the City to make the final determination—as such cooperation was necessary for Gupta to successfully perform her obligations under the Agreement.  (See *Ninety Nine Investments*, *supra*, 113 Cal.App.4th at p. 1131 [party promises to cooperate if it is necessary for other party's successful performance of contractual obligation]; Section I.A.1, *ante*.)  This reading of the Agreement is further supported by the judgment confirming the arbitration award, which explicitly required De Martini to sign any necessary documents (and which De Martini did not appeal).

Contrary to De Martini's contention, the court's interpretation of his obligations under the Agreement did not amount to a rewriting of the contract; instead, it reflects the principle that, when determining if the material terms of an agreement are sufficiently certain, the law favors carrying out the reasonable intention of the parties (i.e., to effectuate the sale of the property following the required historical review).  (See *Patel v. Liebermensch*, *supra*, 45 Cal.4th at p. 349; *Blackburn v. Charnley*, *supra*, 117 Cal.App.4th at p. 766.)  Accordingly, the court did not abuse its discretion in finding the terms of the Agreement were sufficiently definite to enable it to require De Martini to execute the development application documents needed for the City's final determination.  (See *Real Estate Analytics*, *supra*, 160 Cal.App.4th at p. 472.)

## II. The Court Did Not Err by Denying Declaratory Relief

De Martini also argues the trial court abused its discretion in refusing to grant the declaratory relief sought in his cross-complaint, specifically, a declaratory judgment establishing the Agreement had been canceled. Reviewing for abuse of discretion (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647), we find no error.

16

A trial court may refuse to grant declaratory relief where doing so "is not necessary or proper at the time under all the circumstances." (Code Civ. Proc., § 1061; *Meyer v. Sprint Spectrum L.P.*, *supra*, 45 Cal.4th at p. 647.) This determination is within the trial court's sound discretion, except in the extreme circumstances where such relief is either entirely or never appropriate. (*Parker v. Schwarcz* (2022) 84 Cal.App.5th 418, 434.)

De Martini contests the court's denial of declaratory relief based on the same arguments we have already rejected regarding Gupta's alleged failure to comply with her obligations under the Agreement. (See Section I.A.1, *ante*.) Given our prior determination that the court properly found Gupta had not violated the Agreement, we conclude the court acted within its discretion in refusing to grant a declaratory judgment establishing the very opposite, i.e., that the Agreement had been canceled by her inaction. (See *Parker v. Schwarcz*, *supra*, 84 Cal.App.5th at p. 434.)

## DISPOSITION

The judgment is affirmed. Gupta is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

17

_____
PETROU, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
RODRÍGUEZ, J.


A171785; *Gupta v. De Martini*